**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DRIVEN BRANDS HOLDINGS INC., JONATHAN FITZPATRICK, MICHAEL F. DIAMOND, MICHAEL BELAND, GARY FERRERA, DANIEL RIVERA, and REBECCA FONDELL,<br><br>Defendants. | Case No.:<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff City of Hollywood Police Officers' Retirement System ("Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Driven Brands Holdings Inc. ("Driven Brands" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (defined below).

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a Class of all persons and entities that purchased or otherwise acquired Driven Brands common stock between May 3, 2023 and February 24, 2026, inclusive (the "Class Period"), against Driven Brands and certain of its officers and executives (collectively, "Defendants"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2. Driven Brands purports to be the largest automotive services provider in North America. The Company has three business segments: Take 5, Franchise Brands, and Car Wash. Under these segments, Driven Brands' automotive services include paint, collision, glass, and repair services, as well as more frequent services like oil changes, car washes, and maintenance.

3. Leading up to and throughout the Class Period, Driven Brands repeatedly assured investors that it was executing a consistent and reliable business strategy centered on growth and generating cash. Indeed, the Company touted to investors its supposed identity: "Driven is Growth and Cash."

4. The action alleges that the Company concealed material weaknesses in its internal controls over financial reporting, which led to inaccurate reporting of the Company's key financial metrics for nearly three years. As a result, Driven Brands misled investors about its operational and financial stability due to its materially misstated financial statements from fiscal year 2023 through the first three quarters of fiscal year 2025.

5. The truth emerged before markets opened on February 25, 2026, when Driven Brands announced that its financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal year 2025, were riddled with "material errors." Driven Brands also informed investors that the affected financial statements "should not be relied upon" and would require

restatement. Moreover, the Company further disclosed that it had "identified material weaknesses in the Company's internal control over financial reporting" and concluded that its "internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

6. Driven Brands described the "primary categories of errors," stating:

*Lease Adjustments*

Certain errors were identified relating to the completeness and accuracy of recording leases. These errors primarily impact right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024 and September 27, 2025.

*Cash Adjustments*

Certain errors were identified relating to unreconciled differences for cash accounts primarily originating in fiscal years 2023 and earlier. The errors affect the opening and ending cash balances and operating cash flows in the consolidated statement of cash flows and result in overstatements of cash and revenue and understatement of selling, general and administrative expense in the consolidated statement of operations for fiscal years 2023 and 2024.

*Expense Classification*

During fiscal years 2023 and 2024, within operating expenses certain supply and other expenses were presented as company-operated store expenses. This error resulted in company-operated store expenses to be overstated for fiscal years 2023 and 2024 and an equal understatement of supply and other expenses in the corresponding periods. This error did not result in any change in total operating expenses.

*Other Errors*

In addition, other errors were identified that primarily relate to fiscal years 2023 or 2024 related to the income tax provision, supply and other revenue, fixed assets, cloud computing, lease cash application, and balance sheet and income statement misclassifications, as well as inappropriately recognized revenue in our ATI business primarily related to fiscal year 2025. The impact of these errors and the lease adjustments, cash adjustments, and expense classification described

above will be reflected in the Company's Annual Report on Form 10-K for the fiscal year 2025.

7. Before markets opened that same day, Driven Brands also announced that the release of its fourth-quarter fiscal year 2025 financial results and related earnings call would be delayed.

8. On this news, the price of Driven Brands common stock fell $5.01 per share, or about 30%, to close at a price of $11.60 per share on February 25, 2026.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District. Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this District, as Driven Brands is headquartered in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14. Based in Hollywood, Florida, Plaintiff City of Hollywood Police Officers' Retirement System administers a retirement benefit plan of approximately $509 million on behalf of more than 700 active, retired, and deferred vested members and their beneficiaries. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Driven Brands common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Driven Brands is incorporated under the laws of Delaware with its principal executive offices located in Charlotte, North Carolina. Driven Brands's common stock trades on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "DRVN."

16. Defendant Jonathan Fitzpatrick ("Fitzpatrick") served as Driven Brands' Chief Executive Officer ("CEO") at all relevant times until his departure from the Company on May 9, 2025.

17. Defendant Michael Beland ("Beland") served as Driven Brands's Chief Accounting Officer ("CAO") at all relevant times until his departure from the Company on January 3, 2025.

18. Defendant Gary W. Ferrera ("Ferrera") served as Driven Brands' Chief Financial Officer ("CFO") from May 10, 2023 until his departure on May 8, 2024.

19. Defendant Michael F. Diamond ("Diamond") has served as Driven Brands' CFO since August 9, 2024, and served in that capacity through the end of the Class Period.

5

20. Defendant Daniel Rivera ("Rivera") has served as Driven Brands' CEO since May 9, 2025, and served in that capacity through the end of the Class Period.

21. Defendant Rebecca Fondell ("Fondell") has served as Driven Brands' Chief Accounting Officer ("CAO") since May 9, 2025, and served in that capacity through the end of the Class Period.

22. Defendants Fitzpatrick, Beland, Ferrera, Diamond, Rivera, and Fondell (collectively, the "Individual Defendants"), because of their positions with Driven Brands, possessed the power and authority to control the contents of, *inter alia*, Driven Brands' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of Driven Brands' reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

23. Driven Brands and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24. Driven Brands claims to be the largest automotive services provider in North America, offering paint, collision, glass, repair, car wash, oil change, and maintenance services. Driven Brands operates under three reportable segments: Take 5, Franchise Brands, and Car Wash.

6

25. In the first quarter of fiscal year 2025, Driven Brands reorganized its operating segments (previously consisting of Maintenance; Car Wash; Paint, Collision, & Glass; and, Platform Services), purportedly to simplify the reporting structure and increase transparency for investors. The Company's three reportable segments are: Take 5, Franchise Brands, and Car Wash.

26. The Take 5 segment is primarily composed of Company and franchise-operated Take 5 Oil Change business, including oil changes and maintenance. Take 5 segment revenue also includes franchise royalties and fees and supply and other product sales.

27. The Franchise Brands segment is primarily composed of a portfolio of franchise brands, including CARSTAR, Meineke, Maaco, and 1-800 Radiator. Franchise Brands segment revenue also includes smaller brands and services for retail and commercial customers, such as commercial fleet operators and insurance carriers.

28. The Car Wash segment is primarily composed of express-style conveyor car wash services for retail and commercial customers.

29. Leading up to and throughout the Class Period, Driven Brands routinely touted that it was executing a consistent and reliable growth strategy and portrayed to investors its purported identity: "Driven is Growth and Cash."

**Defendants' Materially False and Misleading Statements**

30. The Class Period begins on May 3, 2023. Before markets opened that day, Driven Brands issued a press release announcing its financial results for the first quarter of fiscal year 2023, ended April 1, 2023. In the press release, the Company announced, among other things, the following financial results:

> **First Quarter 2023 Highlights**
>
> Comparisons are first quarter of 2023 ended April 1, 2023 versus
> first quarter of 2022 ended March 26, 2022 unless otherwise noted

7

- Revenue increased 20 percent to $562.5 million, driven by same-store sales and net store growth.

- Consolidated same-store sales increased 9 percent.

- The Company added 59 net new stores during the quarter.

- Net Income decreased 14 percent to $29.7 million or $0.17 per diluted share.

- Adjusted Net Income[] decreased 11 percent to $42.3 million or $0.25 per diluted share

- Adjusted EBITDA[] increased 8 percent to $127.8 million.

31. The following week, on May 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q (the "Q1 2023 Form 10-Q"), signed by Fitzpatrick and Beland.

32. Additionally, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), Fitzpatrick signed and filed certifications together with the Q1 2023 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

33. The Q1 2023 Form 10-Q provided more detail about the Company's financial results for the first quarter of fiscal year 2023, including the following reported cash metrics:

| | |
|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (34,014) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 260,773 |
| Cash and cash equivalents, end of period | 190,841 |
| Cash included in advertising fund assets, restricted, end of period | 35,126 |
| Restricted cash, end of period | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 226,759 |

8

34.     The Q1 2023 Form 10-Q reported first quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $243.409 million and $112.328 million, respectively.

35.     The Q1 2023 Form 10-Q also stated that there were "no changes in our internal control over financial reporting that occurred during the three months ended April 1, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

36.     On August 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2023, ended on July 1, 2023 (the "Q2 2023 Form 10-Q"). Fitzpatrick and Beland signed the Q2 2023 Form 10-Q.

37.     Pursuant to SOX, Fitzpatrick and Ferrera signed and filed certifications together with the Q2 2023 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

38.     The Q2 2023 Form 10-Q stated the following:

**Q2 2023 Three Months Ended Highlights and Key Performance Indicators**
*(as compared to same period in the prior year, unless otherwise noted)*

- Revenue increased 19% to $607 million, driven by same-store sales and net store growth.

- Consolidated same-store sales increased 8%.

- The Company added 74 net new stores during the quarter.

- Net Income increased to $38 million or $0.22 per diluted share in the current quarter compared to a Net Loss of $57 million or ($0.34) per diluted share in the prior year period.

- Adjusted Net Income "(non-GAAP)" decreased 18% to $49 million or $0.29 per diluted share.

- Adjusted EBITDA "(non-GAAP)" increased 12% to $151 million.

39. The Q2 2023 Form 10-Q also reported the following cash metrics for the six months ended July 1, 2023:

| | |
|---|---|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (9,302) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 212,123 |
| Cash included in advertising fund assets, restricted, end of period | 38,691 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 251,471 |

40. The Q2 2023 Form 10-Q reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $257.040 million and $96.815 million, respectively.

41. The Q2 2023 Form 10-Q also stated that there "were no changes in our internal control over financial reporting that occurred during . . . [the] quarter ended July 1, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

42. On November 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2023, ended on September 30, 2023 (the "Q3 2023 Form 10-Q"). Fitzpatrick and Beland signed the Q3 2023 Form 10-Q.

10

43.     Pursuant to SOX, Fitzpatrick and Ferrera signed and filed certifications together with the Q3 2023 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

44.     The Q3 2023 Form 10-Q touted that third quarter revenue "increased 12% [year-over-year] to $581 million, driven by same-store sales and net store growth." The Q3 2023 Form 10-Q also reported the following cash metrics for the nine months ended September 30, 2023:

| | |
|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (959) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 260,773 |
| Cash and cash equivalents, end of period | 211,280 |
| Cash included in advertising fund assets, restricted, end of period | 47,877 |
| Restricted cash, end of period | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 259,814 |

45.     The Q3 2023 Form 10-Q reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $262.282 million and $123.012 million, respectively.

46.     Additionally, the Q3 2023 Form 10-Q stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended September 30, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

11

47. On February 28, 2024, Driven Brands filed on Form 10-K/A its amended Annual Report for the fiscal year 2023, ended December 30, 2023 (the "2023 Form 10-K/A"). Beland signed the 2023 Form 10-K/A.

48. Pursuant to SOX, Fitzpatrick and Ferrera signed and filed certifications together with the 2023 Form 10-K/A attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

49. The 2023 Form 10-K/A provided the following regarding fiscal year 2023 net revenue:

| | Year Ended | | |
|---|---|---|---|
| (in thousands, except per share amounts) | December 30, 2023 | December 31, 2022 | December 25, 2021 |
| Net revenue: | | | |
| Franchise royalties and fees | $ 190,367 | $ 171,734 | $ 144,413 |
| Company-operated store sales | 1,526,353 | 1,324,408 | 843,646 |
| Independently-operated store sales | 196,395 | 195,157 | 204,246 |
| Advertising contributions | 98,850 | 87,750 | 75,599 |
| Supply and other revenue | 292,064 | 254,145 | 199,376 |
| **Total net revenue** | 2,304,029 | 2,033,194 | 1,467,280 |

50. The 2023 Form 10-K/A reported the following cash metrics for fiscal year 2023:

| | |
|---|---:|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (45,057) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 176,522 |
| Cash included in advertising fund assets, restricted, end of period | 38,537 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 215,716 |

51.     The 2023 Form 10-K/A reported fiscal year 2023 "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of approximately $1.004 billion and $443.112 million, respectively.

52.     On May 2, 2024, Driven Brands filed a Current Report on Form 8-K announcing that Ferrera "notified the Company of his intent to resign from the Company to pursue a professional opportunity at a privately held company," and that he agreed to "continue serving as Executive Vice President and Chief Financial Officer until the filing of the Company's quarterly report on Form 10-Q for the quarter ended March 30, 2024."

53.     On May 8, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the first quarter of fiscal year 2024, ended on March 30, 2024 (the "Q1 2024 Form 10-Q"). Fitzpatrick and Beland signed the Q1 2024 Form 10-Q.

54.     Pursuant to SOX, Fitzpatrick and Ferrera signed and filed certifications together with the Q1 2024 Form 10-Q attesting to the accuracy of Driven Brands' financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

13

55. The Q1 2024 Form 10-Q reported that first quarter net revenue "increased 2% [year-over-year] to $572 million, driven by same store sales and net store growth." The Q1 2024 Form 10-Q also reported the following first quarter cash metrics:

| | |
|---|---|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (6,084) |
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 215,716 |
| Cash and cash equivalents, end of period | 165,513 |
| Cash included in advertising fund assets, restricted, end of period | 43,462 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 209,632 |

56. The Q1 2024 Form 10-Q reported first quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of approximately $242.053 million and $116.402 million, respectively.

57. The Q1 2024 Form 10-Q also stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended March 30, 2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

58. On August 8, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2024, ended on June 29, 2024 (the "Q2 2024 Form 10-Q"). Fitzpatrick and Beland signed the Q2 2024 Form 10-Q.

59. Pursuant to SOX, Fitzpatrick and Beland signed and filed certifications together with the Q2 2024 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the

disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

60.    The Q2 2024 Form 10-Q reported that second quarter net revenue "increased 1% [year-over-year] to $612 million, driven by higher product and service revenue due to an increase in system-wide sales and net new store growth." The Q2 2024 Form 10-Q also reported the following cash metrics for the six months ended June 29, 2024:

| | |
|---|---:|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (30,480) |
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 215,716 |
| Cash and cash equivalents, end of period | 148,814 |
| Cash included in advertising fund assets, restricted, end of period | 32,008 |
| Restricted cash, end of period | 4,414 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $   185,236 |

61.    The Q2 2024 Form 10-Q also reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $254.174 million and $121.123 million, respectively.

62.    Additionally, the Q2 2024 Form 10-Q stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended June 29, 2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

63. On November 7, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2024, ended on September 28, 2024 (the "Q3 2024 Form 10-Q"). Fitzpatrick and Beland signed the Q3 2024 Form 10-Q.

64. Pursuant to SOX, Fitzpatrick and Diamond signed and filed certifications together with the Q3 2024 Form 10-Q attesting to the accuracy of Driven Brands' financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

65. The Q3 2024 Form 10-Q reported that third quarter net revenue "increased 2% [year-over-year] to $592 million, driven by higher product and service revenue due to an increase in system-wide sales, net new store growth," among other things. The Q3 2024 Form 10-Q also reported the following cash metrics for the nine months ended September 28, 2024:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | **215,716** |
| Cash and cash equivalents, end of period | 204,181 |
| Cash included in advertising fund assets, restricted, end of period | 40,465 |
| Restricted cash, end of period | 4,414 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | **$ 249,060** |

66. The Q3 2024 Form 10-Q also reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $242.073 million and $149.766 million, respectively.

67. Additionally, the Q3 2024 Form 10-Q stated that, "with the exception of the implementation" new enterprise resource planning (ERP) system, there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended September 28,

16

2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

68. On December 12, 2025, Driven Brands filed a Current Report on Form 8-K announcing that Beland had "informed the Company of his intent to resign from his position, effective January 3, 2025, to pursue another opportunity."

69. On February 25, 2025, the Company announced that Fitzpatrick "informed the Company of his intent to step down as President and CEO effective May 9, 2025."

70. On February 26, 2025, Driven Brands filed its Annual Report on Form 10-K for the fiscal year 2024, ended December 28, 2024 (the "2024 Form 10-K"). Fitzpatrick and Diamond Signed the 2024 10-K.

71. Pursuant to SOX, Fitzpatrick and Diamond signed and filed certifications together with the 2024 Form 10-K attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

72. The 2024 Form 10-K provided the following regarding fiscal year 2024 net revenue:

| | Year Ended | | | |
|---|---|---|---|---|
| (in thousands) | December 28, 2024 | % of Net Revenues | December 30, 2023 | % of Net Revenues |
| Franchise royalties and fees | $ 188,634 | 8.1 % | $ 190,367 | 8.3 % |
| Company-operated store sales | 1,544,932 | 66.0 % | 1,526,353 | 66.2 % |
| Independently-operated store sales | 212,396 | 9.1 % | 196,395 | 8.5 % |
| Advertising fund contributions | 101,316 | 4.3 % | 98,850 | 4.3 % |
| Supply and other revenue | 292,310 | 12.5 % | 292,064 | 12.7 % |
| **Total net revenue** | $ 2,339,588 | 100.0 % | $ 2,304,029 | 100.0 % |

17

73. The 2024 Form 10-K provided the following regarding fiscal year 2024 cash metrics:

| | | | |
|---|---|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (6,474) | (45,057) | (302,019) |
| Cash and cash equivalents, beginning of period | 176,522 | 227,110 | 523,414 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 | 32,871 | 38,586 |
| Restricted cash, beginning of period | 657 | 792 | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 215,716 | 260,773 | 562,792 |
| Cash and cash equivalents, end of period | 169,954 | 176,522 | 227,110 |
| Cash included in advertising fund assets, restricted, end of period | 38,930 | 38,537 | 32,871 |
| Restricted cash, end of period | 358 | 657 | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 209,242 | $ 215,716 | $ 260,773 |

74. The 2024 Form 10-K reported fiscal year 2024 "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $993.090 million and $554.775 million, respectively.

75. The 2024 Form 10K also reported "[o]perating lease right-of-use assets" of approximately $1.370 billion for fiscal year 2024 and approximately $1.389 billion for fiscal year 2023.

76. On May 8, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the first quarter of fiscal year 2025, ended on March 29, 2025 (the "Q1 2025 Form 10-Q"). Fitzpatrick and Diamond signed the Q1 2025 Form 10-Q.

77. Pursuant to SOX, Fitzpatrick and Diamond signed and filed certifications together with the Q1 2025 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the

disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

78. The Q1 2025 Form 10-Q reported that first quarter net revenue "increased 7% [year-over-year] to $516.2 million, driven by company-operated store revenue, primarily due to net new store growth within our Take 5 segment and same store sales growth within our Take 5 and Car Wash segments." The Q1 2025 Form 10-Q also reported the following first quarter cash metrics:

| | | |
|---|---:|---:|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (15,099) | (6,084) |
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 155,584 | 165,513 |
| Cash included in advertising fund assets, restricted, end of period | 38,227 | 43,462 |
| Restricted cash, end of period | 332 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 194,143 $ | 209,632 |

79. The Q1 2025 Form 10-Q also reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $181.866 million and $143.052 million, respectively.

80. Additionally, the Q1 2025 Form 10-Q stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended March 29, 2025 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

19

81.     On August 7, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2025, ended on June 28, 2025 (the "Q2 2025 Form 10-Q"). Rivera and Fondell signed the Q2 2025 Form 10-Q.

82.     Pursuant to SOX, Rivera and Diamond signed and filed certifications together with the Q2 2025 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

83.     The Q2 2025 Form 10-Q reported that second quarter net revenue "increased 6% [year-over-year] to $551 million, driven by company-operated store sales, primarily due to net new store growth and same store sales growth within our Take 5 segment and independently-operated store sales due to same store sales growth within our Car Wash segment." The Q2 2025 Form 10-Q also reported the following cash metrics for the six months ended June 28, 2025:

| | | |
|---|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (3,339) | (30,480) |
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 166,131 | 148,814 |
| Cash included in advertising fund assets, restricted, end of period | 39,438 | 32,008 |
| Restricted cash, end of period | 334 | 4,414 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 205,903 | $ 185,236 |

84.     The Q2 2025 Form 10-Q also reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $190.396 million and $183.118 million, respectively.

85. Additionally, the Q2 2025 Form 10-Q stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended June 28, 2025 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

86. On November 5, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2025, ended on September 27, 2025 (the "Q3 2025 Form 10-Q"). Rivera and Fondell signed the Q3 2025 Form 10-Q.

87. Pursuant to SOX, Rivera and Diamond signed and filed certifications together with the Q3 2025 Form 10-Q attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

88. The Q2 2025 Form 10-Q reported that third quarter "[n]et revenue was $536 million for the three months ended September 27, 2025 compared to $502 million for the three months ended September 28, 2024." The Q3 2025 Form 10-Q also reported the following cash metrics for the nine months ended September 27, 2025:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 169,954 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 |
| Restricted cash, beginning of period | 358 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 |
| Cash and cash equivalents, end of period | 162,028 |
| Cash included in advertising fund assets, restricted, end of period | 41,361 |
| Restricted cash, end of period | 335 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 203,724 |

89.     The Q3 2025 Form 10-Q also reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $193,129 million and $145.177 million, respectively.

90.     The Q3 2025 Form 10-Q also stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended September 27, 2025 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

91.     The above statements identified in ¶¶ 30-90 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading. Specifically, Defendants failed to disclose that: (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) in turn, the affected financial statements were unreliable and would ultimately need to be restated; and (4) due to the foregoing, Defendants' positive statements Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### **The Truth Is Revealed**

92.     The truth about the Company's operational and financial stability was revealed before markets opened on February 25, 2026. That day, Driven Brands filed a Current Report on Form 8-K revealing that it had "concluded there were material errors" in its financial statements for fiscal years 2023 and 2024, as well as all quarterly and year-to-date periods in fiscal year 2024 and the first three quarterly and year-to-date periods of fiscal year 2025.  As a result, Driven Brands

disclosed that those financial statements "should not be relied upon" and would require restatement.

93. In that same Current Report on Form 8-K, Driven Brands described "the primary categories of errors that have been identified in connection with the preparation" of its annual report for the fiscal year 2025, stating:

*Lease Adjustments*

Certain errors were identified relating to the completeness and accuracy of recording leases. These errors primarily impact right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024 and September 27, 2025.

*Cash Adjustments*

Certain errors were identified relating to unreconciled differences for cash accounts primarily originating in fiscal years 2023 and earlier. The errors affect the opening and ending cash balances and operating cash flows in the consolidated statement of cash flows and result in overstatements of cash and revenue and understatement of selling, general and administrative expense in the consolidated statement of operations for fiscal years 2023 and 2024.

*Expense Classification*

During fiscal years 2023 and 2024, within operating expenses certain supply and other expenses were presented as company-operated store expenses. This error resulted in company-operated store expenses to be overstated for fiscal years 2023 and 2024 and an equal understatement of supply and other expenses in the corresponding periods. This error did not result in any change in total operating expenses.

*Other Errors*

In addition, other errors were identified that primarily relate to fiscal years 2023 or 2024 related to the income tax provision, supply and other revenue, fixed assets, cloud computing, lease cash application, and balance sheet and income statement misclassifications, as well as inappropriately recognized revenue in our ATI business primarily related to fiscal year 2025. The impact of these errors and the lease adjustments, cash adjustments, and expense classification described

above will be reflected in the Company's Annual Report on Form
10-K for the fiscal year 2025.

94.     In the same Current Report on Form 8-K, the Company acknowledged that management "identified material weaknesses in the Company's internal control over financial reporting resulting in the conclusion that our internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

95.     Additionally, before markets opened that same day, Driven Brands filed another Current Report on Form 8-K, informing investors that, due to the material errors requiring restatement of its previous financial statements, the Company decided to delay the release of its financial results for the fourth quarter of fiscal year 2025 and related earnings call.

96.     On this news, the price of Driven Brands common stock fell $5.01 per share, or about 30%, from a closing price of $16.61 per share on February 24, 2026, to a closing price of $11.60 per share on February 25, 2026.

97.     Analysts reacted immediately. For example, BTIG analysts published a research report titled "Flash: Surprise Earnings Delay as Material Errors in Financial Reporting Emerge," highlighting that the "fairly extensive list of issues is concerning and the disclosure that revenue was overstated while SG&A expenses were understated indicates meaningful P&L impact." Similarly, Piper Sandler analysts downgraded Driven Brands's stock, reduced their price targets, and issued a report titled "In the Penalty Box for a While." The report explained that "[c]onsidering the 8K did not confirm revenue, adj. EBITDA or EPS figures, we assume there is risk that all three of those line items see changes in the FY23-25 restatements."

## CLASS ACTION ALLEGATIONS

98.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that

purchased Driven Brands common stock between May 3, 2023 and February 24, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

99. The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, common stock of Driven Brands actively traded on the Nasdaq under the symbol "DRVN." Millions of Driven Brands shares were traded publicly during the Class Period on the Nasdaq. As of November 3, 2025, the Company had more than 164 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Driven Brands or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

100. Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

101. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

102.	Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)	whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)	whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)	whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Driven Brands;

d)	whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Driven Brands;

e)	whether the market price of Driven Brands common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)	the extent to which the members of the Class have sustained damages and the proper measure of damages.

103.	A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

104. The market for Driven Brands common stock was an open, well-developed, and efficient market at all relevant times. As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Driven Brands' common stock traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased Driven Brands' common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Driven Brands and have been damaged thereby.

105. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Driven Brands' business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

106. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of

the Company were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

107. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Driven Brands, their control over, receipt, and/or modification of Driven Brands' allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Driven Brands, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

108. As a result of their purchases of Driven Brands' common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

109. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Driven Brands who knew that the statement was false when made.

## LOSS CAUSATION

110. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

111. As detailed herein, during the Class Period, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This

artificially inflated the prices of Driven Brands' common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Driven Brands' stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

112. The market for Driven Brands common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Driven Brands' common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Driven Brands common stock and market information relating to Driven Brands and have been damaged thereby.

113. At all times relevant, the market for Driven Brands common stock was an efficient market for the following reasons, among others:

a) Driven Brands was listed and actively traded on the Nasdaq, a highly efficient and automated market;

b) As a regulated issuer, Driven Brands filed periodic public reports with the SEC and/or the Nasdaq;

c) Driven Brands regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d) Driven Brands was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

114. As a result of the foregoing, the market for Driven Brands common stock promptly digested current information regarding Driven Brands from all publicly available sources and reflected such information in the Company's stock price. Under these circumstances, all purchasers of Driven Brands common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

115. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects — information that Defendants were obligated to disclose but did not — positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

116. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

117. Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Driven Brands's common stock; and (iii) cause Plaintiff and other members of the Class to purchase Driven Brands common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

118. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Driven Brands common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

119. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Driven Brands's business, operations, and prospects, as specified herein. Defendants employed devices, schemes,

and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Driven Brands' business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary to make the statements made about Driven Brands and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

120. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and, (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

121. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to

32

ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Driven Brands' operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock. As demonstrated by Defendants' misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

122. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Driven Brands' common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the markets in which the common stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Driven Brands common stock during the Class Period at artificially inflated prices and were damaged thereby.

123. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Driven Brands was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased Driven Brands common stock, or, if they had purchased

33

such shares during the Class Period, they would not have done so at the artificially inflated prices that they paid.

124. By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

125. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**
**Against All Individual Defendants**

126. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

127. The Individual Defendants acted as controlling persons of Driven Brands within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

128. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

129. As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

130. WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

   a) Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

   b) Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

   c) Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

   d) Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

131. Plaintiff demands a trial by jury.

Dated: April 8, 2026

Respectfully submitted,

/s/ William R. Terpening

**TERPENING LAW PLLC**
William R. Terpening
NC Bar No. 36418
221 West Eleventh Street
Charlotte, NC 28202
Tel.: (980) 265-1700
Fax: (980) 265-1729
terpening@terpeninglaw.com

*Local Counsel for Plaintiff City of Hollywood Police Officers Retirement System*

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
Nicholas Corso (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com
ncorso@saxenawhite.com

*Counsel for Plaintiff City of Hollywood Police Officers Retirement System*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
Stuart A. Kaufman (*pro hac vice* forthcoming)
7080 NW 4th Street

36

Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Plaintiff City of Hollywood Police Officers Retirement System*